UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------

BRETT HARTMAN,

        Plaintiff,

v.

SHERRI BEVAN WALSH, Prosecutor

        Defendant.

-------------------------------------------------------

CASE NO. 5:11-cv-01401

OPINION & ORDER
[Resolving Doc. No. 21]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    Plaintiff Brett Hartman, a death-row inmate, filed this lawsuit under 42 U.S.C. § 1983, against Defendant-Prosecutor Sherri Bevan Walsh. With this case, Hartman claims that Ohio's post-conviction procedures are inadequate to protect his federal Constitutional rights. Walsh moves for judgment on the pleadings. [Doc. 21.] Hartman opposes the motion. [Doc. 31.] Because Hartman fails to state a claim for relief, the Court **GRANTS** Walsh's motion for judgment on the pleadings.

**I. Background**

    Brett Hartman seeks DNA testing of physical evidence related to his 1998 conviction for the aggravated murder of Winda Snipes.[1] On May 14, 1999, Hartman filed a first petition for state postconviction relief in the Summit County Court of Common Pleas. That court dismissed his petition, and Hartman unsuccessfully appealed. In 2003, Hartman filed his first federal habeas

---

[1] The details of the murder and original criminal proceedings are available in the Ohio Supreme Court decision affirming Hartman's conviction. *State v. Hartman*, 274 N.E.2d 1150 (Ohio 2001).

-1-

Case No. 5:11-CV-1401
Gwin, J.

corpus petition. The Court relied upon Hartman's assertion that he did not have anal sex with the victim and did not have anal or vaginal sex with the victim in the afternoon of September 9, 1997, the time of her death. And, the Court and Hartman relied upon the testimony of the coroner that "the most likely evidence available for the identification of Ms. Snipes' assailant is the semen and seminal fluid found in her vaginal and anal cavities. The condition of the semen and seminal fluid was such that Dr. Platt opined that these fluids were deposited in Ms. Snipes at or about the time of death – not 12 to 14 hours before her death [when Hartman says he last had sexual relations with Ms. Snipes]." [02-CV-1336, Doc. 17-1 at 30.]

After crediting Hartman's argument that the seminal fluids in the victim's anal cavity had been deposited near the time of her death and crediting his statement that he had no sexual relations with her in the afternoon of September 9, 1997, had not had anal sex with her on September 9, 1997, this Court ordered DNA testing of semen found in the victim's anal cavity. [02-CV-1336, Doc. 45.] The results of the test confirmed that Hartman was the source of semen found in both the victim's vaginal and the victim's anal cavities. Stated simply, victim Snipes died in the afternoon of September 9, 1997, and the requested DNA testing showed that Hartman had anal sex with her near the time of her death.

Hartman then asked for discovery on all the "DNA, blood, saliva, hair, semen, seminal fluid, fingerprints, and the like in the possession of the Summit County Prosecutor's office." [02-CV-1336, Doc. 51 at 2 n.1.] Having "already granted discovery upon the single most relevant evidence on whether Hartman is actually innocent," the Court denied this request. Id. at 6.

In March 2009, Hartman asked Prosecutor Sherri Bevan Walsh to hand over previously-untested evidence: blood, unidentified hairs found on the body and at the crime scene, a used

-2-

Case No. 5:11-CV-1401
Gwin, J.

condom found at the crime scene, and fingerprints lifted at the crime scene. Hartman offered to pay any costs associated with the testing, but Walsh refused to release the evidence absent a court order. [Doc. 7-2 at 31.] In denying Hartman's request, the Walsh relied, in part, on this Court's 2003 order related to Hartman's federal habeas petition.

Hartman then filed a second-in-time first petition for post-conviction relief to the Ohio trial court under Ohio Revised Code § 2953.21, Ohio's postconviction relief statute. With this petition, Hartman argued that the "hair evidence and the used condom ha[ve] never been tested," and asked that he be granted leave to engage in discovery. [Doc. 7-2.] Hartman's claim was bolstered by testimony at his clemency hearing, in which the investigating detective admitted for the first time that he had initially focused on the victim's ex-boyfriend, but moved on to Hartman after the ex-boyfriend's alibi checked out—an alibi which apparently has since been found not to coincide with the time of the victim's death. [Doc. 7-2 at 11.]

Concurrent with his state post-conviction relief petition Hartman filed a motion for authorization to file a second or successive habeas petition with the U.S. Court of Appeals for the Sixth Circuit. [Doc. 8-12.] The Sixth Circuit stayed Hartman's execution pending the Supreme Court's decision in *District Attorney's Office for Third Judicial Dist. v. Osborne*, 129 S.Ct. 2308 (2009). After the *Osborne* decision, the Sixth Circuit denied Hartman's motion to file a second habeas petition and lifted the stay of execution. [Doc. 8-13.]

The state trial court also dismissed Hartman's state petition for postconviction relief, relying in part on *Osborne* in holding "there is no federal constitutional right to post-conviction access to evidence in order to perform DNA tests," and the "ability of a defendant to perform such tests post-conviction rests" on Ohio statutes. [Doc. 7-10 at 5.] Hartman, the court noted, "never attempted to

-3-

Case No. 5:11-CV-1401
Gwin, J.

have DNA tests ordered pursuant to Ohio statutes." [Doc. 7-10 at 5.] And "[b]ecause the Defendant did not comply with the statutory requirements concerning DNA testing, this claim is rejected." [Doc. 7-10 at 7 (citing Ohio Rev. Code §§ 2953.71 – 2953.84).]

Hartman then appealed the trial court denial to the state appellate court, which determined that the trial court lacked jurisdiction to consider the merits of Hartman's petition and remanded for dismissal. [Doc. 7-13.] The appellate court noted that the DNA testing Hartman is requesting "was available to him at his trial many years ago" and he "cannot now argue that he was prevented from discovering an additional hair and a used condom." [Doc. 7-13 at 5.]

On July 21, 2011, Governor Kasich vacated his execution date and granted him a reprieve to November 13, 2012. [Doc. 17.]

Hartman now alleges that the state's denial of access to the untested physical evidence, "violates the rights to due process, equal protection, adequate review, and to be free from cruel and unusual punishment." [Doc. 1 at ¶ 86.] But in opposition to Defendant's motion for judgment on the pleadings, Hartman clarifies that the question before the court is "whether Ohio's procedures are adequate to protect Hartman's Constitutional rights." [Doc. 31 at 2.]

Walsh moves for judgment on the pleadings. She asserts that: (1) this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine; (2) Plaintiff fails to state a claim upon which relief can be granted; and (3) Plaintiff's claims are barred by collateral estoppel.

## II. Legal Standard

On a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the Court employs the same standard as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *See Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th

Case No. 5:11-CV-1401
Gwin, J.

Cir. 2008). Thus, "'[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Id.* (citation omitted). On a 12(c) motion, the Court may consider exhibits incorporated by reference into the pleadings. *See, e.g.*, *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007). Similarly, "courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir.1999) (discussing a 12(b)(6) motion to dismiss), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

### III. Analysis

*A. Procedural Due Process*

Hartman first claims that the state trial court denied him access to Ohio's postconviction DNA testing process in violation of his procedural due process rights. In a recent decision, the Supreme Court held that "a postconviction claim for DNA testing is properly pursued in a § 1983 action . . . *Osborne* rejected the extension of substantive due process to this area and left slim room for the prisoner to show that the governing state law denies him procedural due process." *Skinner v. Switzer*, 131 S.Ct. 1289, 1203 (2011) (citing *District Attorney's Office for Third Judicial Dist. v. Osborne*, 129 S.Ct. 2308, 2322 (2009).)

Since 2003, Ohio law has provided specific procedures for post-conviction DNA testing. Under Ohio Revised Code §§ 2953.71-2953.83, eligible offenders can request that the state perform DNA testing on biological material from their case. In contrast, Ohio's general postconviction relief statute, Ohio Revised Code § 2953.21, provides relief where a conviction results in "such a denial

-5-

Case No. 5:11-CV-1401
Gwin, J.

or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States."

Hartman's claim does not fall into the "slim room" left by *Osborne*. Even if *Skinner* does in fact provide Hartman a cause of action under Section 1983, his Complaint still fails to state a claim. Although Hartman has filed two state petitions for postconviction relief under § 2953.21, a federal habeas petition, a motion for authorization to file a second or successive habeas petition, and numerous appeals on those actions, Hartman has never filed an application for postconviction DNA testing under O.R.C. §§ 2953.71-2953.83. Without ever pursing the relief that Ohio law provides him, Hartman asks this court to declare that the Ohio procedure violates his "procedural and substantive due process rights and deprives him of his life and liberty interests to prove his interests." Commenting on a similar situation, the Supreme Court said:

> [Plaintiff's] attempt to sidestep state process through a new federal lawsuit puts [plaintiff] in a very awkward position. If he simply seeks the DNA through the State's discovery procedures, he might well get it. If he does not, it may be for a perfectly adequate reason, just as the federal statute and all state statutes impose conditions and limits on access to DNA evidence. It is difficult to criticize the State's procedures when [plaintiff] has not invoked them. This is not to say that [plaintiff] must exhaust state-law remedies. *But it is [plaintiff's] burden to demonstrate the inadequacy of the state-law procedures available to him in state postconviction relief. These procedures are adequate on their face, and without trying them, [plaintiff] can hardly complain that they do not work in practice.*

*Osborne*, 129 S.Ct. 2321 (2009) (finding Alaska's postconviction DNA access procedures constitutionally adequate) (citations omitted) (emphasis added).

Similarly, it is Hartman's burden to demonstrate that Ohio's procedures are inadequate. Hartman does not make a claim that Ohio's postconviction DNA testing scheme under O.R.C. §§ 2953.71-2953.83 is inadequate on its face or as applied to him. In contrast to the plaintiff in *Skinner*, Hartman has not been denied access to the evidence under Ohio's postconviction DNA testing

-6-

Case No. 5:11-CV-1401
Gwin, J.

scheme. Rather, he has used only the general postconviction relief methods in Ohio Revised Code § 2953.21. Because a "[p]laintiff may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress her due process violations," Hartman fails to state a claim that Ohio's postconviction DNA testing scheme denies him procedural due process. *Jefferson v. Jefferson County Public School System*, 360 F.3d 583, 588 (6th Cir. 2004). Therefore, the Court grants Defendant Walsh's motion for judgment on the pleadings and dismisses Hartman's procedural due process claim.

*B. Substantive Due Process*

The Complaint additionally alleges that Ohio's postconviction process (or the trial court's denial of access thereto) violates Hartman's substantive due process rights. [Doc. 1 at ¶¶ 77, 92.] In just the past two years, the Supreme Court has twice rejected the existence of a postconviction substantive due process right to DNA evidence. *See Skinner v. Switzer*, 131 S.Ct. 1289, 1203 (2011); *District Attorney's Office for Third Judicial Dist. v. Osborne*, 129 S.Ct. 2308, 2322 (2009) ("We reject the invitation [to recognize a freestanding right to DNA evidence untethered from the liberty interests] and conclude, in the circumstances of this case, that there is no such substantive due process right."). *See also In re Smith*, 349 Fed.Appx. 12, 15 (6th Cir. 2009) (dismissing the plaintiff's Section 1983 claims for postconviction DNA testing and stating, "the Supreme Court held in *Osborne* that there is no freestanding substantive due process right to DNA testing."). Here, too, this Court declines the invitation to expand substantive due process rights. Because no substantive due process right to postconviction DNA testing exists, Hartman cannot state a claim for substantive due process violations. Thus the Court grants Walsh's motion for judgment on the pleadings and dismisses Hartman's substantive due process claim.

Case No. 5:11-CV-1401
Gwin, J.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the Defendant's motion for judgment on the pleadings.  The Court dismisses all of Hartman's claims against Walsh.

IT IS SO ORDERED.


Dated: November 2, 2011                         s/         *James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE